IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.                              CRIMINAL CASE NO. 2:24-00098

TRACY DON JACKSON, JR.

### MEMORANDUM OPINION AND ORDER

Before the court is defendant Tracy Don Jackson Jr.'s
motion to suppress evidence recovered during the execution of a
search warrant and subsequent statements he made during an
interrogation at the police station.  See ECF No. 19.  For the
reasons that follow, the motion is **DENIED.**

### I.   Background

On June 11, 2024, a grand jury returned a two-count
indictment against Jackson, charging him with possession with
intent to distribute fentanyl and possession of a firearm in
furtherance of a drug trafficking crime.  See ECF No. 2.

According to the underlying police report, on the morning
of June 15, 2023, members of the Charleston Field Office of the
ATF and Charleston Police Department executed a search warrant
on the home of Kayla McCallister, (see ECF No. 19-2), whom the
ATF suspected of making false statements and providing false
information in connection with the purchase of firearms, being
an addicted person in possession of firearms, straw purchasing

firearms, trafficking in firearms, and conspiracy, (see ECF No. 19-1).

ATF Special Agent Jarrod C. Chittum provided an affidavit accompanying the application for the search warrant.  See ECF No. 19-1.  It states that the ATF began investigating McCallister after receiving a tip from a confidential informant ("CI") that an individual named Curon Cameron Cordon sold drugs in Charleston.  See id.  Law enforcement officers arranged for the CI to purchase drugs from Cordon.  See id.  During a controlled purchase, Cordon informed the CI that he also sold firearms.  See id.

Therefore, the ATF arranged a controlled purchase of firearms from Cordon.  See id.  After that controlled purchase, the ATF searched the transaction history of the firearms, and the ATF-4473 forms listed McCallister as the purchaser.  See id.  Cordon told the CI that McCallister purchased the guns for him to support her drug habit.  See id.  The ATF arranged for the CI to purchase a third firearm from Cordon, and Special Agent Chittum observed McCallister enter Spring Hill Rod and Gun, complete a Form 4473, and deliver a 5.56 rifle to Cordon in a nearby Dollar General parking lot.  See id.  Cordon then delivered the rifle to the CI.  See id.

The ATF arranged several more purchases from Cordon, and each time, the firearms were purchased by McCallister.  See id.

2

Further investigation revealed she purchased several other firearms for which the ATF was unable to account.  See id.

Based on this information, United State Magistrate Judge Dwayne L. Tinsley issued a search warrant for McCallister's home.  See id.  Officers hoped to find evidence of firearms trafficking, including, among other things, firearms, ammunition, firearm receipts, and firearm packaging.  See ECF No. 19-1.

When officers executed the warrant, they found inside McCallister's residence four individuals, including McCallister and Jackson.  See ECF No. 19-2.  The officers recovered, among other things, a Glock pistol, suspected fentanyl, suspected marijuana, suspected methamphetamine, digital scales, multiple firearm magazines, ammunition, and firearm receipts.  See id. Police also found a firearm receipt during a search of McCallister's car.  See id.

Officers found the Glock and suspected fentanyl in the living room with Jackson, giving rise to the charges against him.  See ECF No. 19-3.

Later that morning, law enforcement officers interviewed Jackson at the police station.  See Recorded Interview, ECF No. 24-1.[1]  Prior to questioning him, the officers advised Jackson of

---

[1]  The recording of this interview was also admitted as an exhibit during the suppression hearing.

his Miranda rights, which he stated he understood and elected to waive. See id. He proceeded to incriminate himself during the approximately forty-minute interview. See id.

At the outset of the questioning, he told the officers that he smoked marijuana and drank alcohol only a few hours before officers awakened him on the couch earlier that morning. See id. He also indicated that he was tired and wished to sleep. See id.

On February 20, 2025, Jackson filed this motion to suppress the items recovered during the search and the statements he made during his interview at the police station. See ECF No. 19.

Regarding the search warrant, he argues that "there is not a sufficient nexus between the alleged offense and the address that was searched[,]" because "Jackson has no information regarding the reliability of the confidential informant . . . . [and] any other evidence relied upon was taken from a ledger where Ms. McCallister purchased firearms, which is not a crime." ECF No. 19 at 3.

Regarding Jackson's interrogation, he argues that he was too intoxicated to waive his right to counsel. See id. In support of this argument, he directs the court to the video of his interrogation and insists that it shows he was not capable of providing voluntary statements because, at the beginning of the interview, he was "nodding to sleep," told officers that he

4

drank alcohol and smoked marijuana before going to McCallister's house to sleep, and stated that he wished to go to jail to sleep.  See id.

The court held a hearing on defendant's motion on April 30, 2025.  The government presented two witnesses:  Special Agent Chittum and Wyatt McCabe, the Charleston Police Department Detective who interviewed Jackson.  The court found both witnesses credible.

Chittum testified to the basis of the search warrant for McCallister's home.  He stated, consistent with his affidavit in support of the search warrant, that McCallister fell under suspicion when her name appeared as the purchaser of the firearms sold to the CI.  He testified about witnessing McCallister conduct the straw purchase at Spring Hill Rod and Gun and delivering the firearm to Cordon at the Dollar General. He also testified that the CI that purchased the firearms from Cordon had proven himself to be a credible source in other successful investigations.

Detective McCabe testified about his involvement in the arrest and interview of Jackson.  He stated that during the search of McCallister's home, officers found Jackson on the couch at approximately 6:00 a.m.  He said the search team found the Glock and fentanyl between the couch's armrest and cushion, where Jackson rested his head when officers made entry into the

5

home.  Detective McCabe testified that Jackson informed him that
he had arrived at the house only a few hours before, after a
night of drinking alcohol.  Detective McCabe said that before
the interview at the police station, Jackson indicated that he
was sleepy.

The court took the matter under advisement pending this
Memorandum Opinion and Order.

## II.  <u>Legal Standard</u>

The Fourth Amendment to the United States Constitution
prohibits unreasonable searches and seizures and requires
probable cause to support search warrants:

> The right of the people to be secure in
> their persons, houses, papers, and effects,
> against unreasonable searches and seizures,
> shall not be violated, and no Warrants shall
> issue, but upon probable cause, supported by
> Oath or affirmation, and particularly
> describing the place to be searched, and the
> persons or things to be seized.

U.S. Const. amend. IV.

The Fifth Amendment to the United States Constitution
protects against compulsory self-incrimination, providing that
no person "shall be compelled in any criminal case to be a
witness against himself."  U.S. Const. amend. V.  "In <u>Miranda v.</u>
<u>Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the
Supreme Court instituted procedural measures to protect the
privilege against self-incrimination."  <u>United States v.</u>

*Pahlawan*, No. 3:24cr41 (DJN), 2025 WL 1239354, at *25 (E.D. Va. Apr. 29, 2025).  To safeguard the right against self-incrimination, *Miranda* requires that prior to a custodial interrogation a defendant must be advised of the following:

> that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* (quoting *Miranda*, 384 U.S. at 444).  A defendant may "waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently."  *United States v. Smith*, 608 F.2d 1011, 1012 (4th Cir. 1979).

Courts may exclude evidence recovered in violation of a defendant's constitutional rights.  *See* *Davis v. United States*, 564 U.S. 229, 248 (2011).  When seeking to suppress evidence under the exclusionary rule, the defendant initially bears the burden of proof.  *See* *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981).  If, however, the defendant establishes a proper basis for the motion, the burden shifts to the government to prove the admissibility of the evidence by a preponderance of the evidence.  *See* *United States v. Jones*, No. 2:22-cr-00137, 2023 WL 2581999, at *3 (S.D.W. Va. Mar. 20, 2023) (citing *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974)).  The preponderance of the evidence standard requires only that the

relevant facts be more likely true than not.  See United States
v. Gibson, 309 F. App'x 754, 755 (4th Cir. 2009) (per curiam)
(citing United States v. Kiulin, 360 F.3d 456, 461 (4th Cir.
2004)).

### III. Analysis

**A.  Search Warrant**

The "ultimate touchstone of the Fourth Amendment is
'reasonableness.'"  Riley v. California, 573 U.S. 373, 381
(2014) (quoting Brigham City v. Stuart, 547 U.S. 398, 403
(2006)).  "In that regard, warrantless searches are generally
unreasonable, see Schneckloth v. Bustamonte, 412 U.S. 218, 219,
93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and a search warrant must
be supported by probable cause, United States v. Harris, 403
U.S. 573, 577, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971)."  United
States v. May, 747 F. Supp. 3d 832 (W.D.N.C. 2024).  "Probable
cause is 'a fluid concept—turning on the assessment of
probabilities in particular factual contexts—not readily, or
even usefully, reduced to a neat set of legal rules.'"  Id.
(quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)).

"When considering a challenge to a search warrant
affidavit, a court must be able to conclude that '[s]ufficient
information [was] presented to the magistrate to allow for the
exercise of independent judgment.'"  Id. (quoting United States
v. Lalor, 996 F.2d 1578, 1580-81 (4th Cir. 1993)).  "Generally,

8

probable cause exists 'where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" Id. (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)).

"[A] magistrate's finding of probable cause 'should be paid great deference by reviewing courts.'"  Id.  (quoting Gates, 462 U.S. at 236).  "A strong presumption of validity surrounds a warrant and any search conducted pursuant to it."  United States v. Young, No. 2:09-cr-00223, 2010 WL 693117, at *5 (S.D.W. Va. Feb. 22, 2010) (citing Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991)).

Regarding information provided by a confidential informant, "a proven, reliable informant is entitled to far more credence than an unknown, anonymous tipster."  United States v. Bynum, 293 F.3d 192, 197 (4th Cir. 2002) (citing Florida v. J.L., 529 U.S. 266, 270 (2000)).  A warrant may be invalid if accompanied by a "bare-bones" affidavit, which are usually "affidavits in which the affiant merely recites the conclusions of others- usually a confidential informant-without corroboration or independent investigation of the facts alleged."  Young, No. 2:09-cr-00223, 2010 WL 693117, at *5 (quoting United States v. Johnson, 4 F. App'x 169, 172 (4th Cir. 2001)).

In any event, even if a magistrate judge erroneously issues a warrant lacking probable cause, evidence recovered pursuant to the warrant may be admissible if "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." United States v. Leon, 468 U.S. 897, 920 (1984).  This is known as the good faith exception to the exclusionary rule.  "As a general rule, when a neutral magistrate has issued a warrant, the issuance 'suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" United States v. Skinner, No. 3:19CR19, 2021 WL 1725543, at *20 (quoting Leon, 468 U.S. at 922).  However, there are four circumstances under which officer can be found not to have relied in good faith on the issuance of a warrant:

> • First, where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;
>
> • Second, where the magistrate acted as a rubber stamp for the officers and so wholly abandoned his detached and neutral judicial role;
>
> • Third, where a supporting affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> • Fourth, where a warrant is so facially deficient-i.e., in failing to particularize the place to be searched or the things to be

10

> seized-that the executing officers cannot
> reasonably presume it to be valid.

See United States v. Williams, 548 F.3d 311, 317-18 (4th Cir. 2008) (cleaned up).

In this case, the affidavit provides probable cause in support of the search warrant.  The firearms purchased by the CI were traced to McCallister as the purchaser, and Special Agent Chittum personally observed McCallister conduct a straw purchase and deliver that firearm to Cordon.  The independent record checks and personal observations of Special Agent Chittum were not influenced by the credibility of the CI.  If anything, these events corroborated information provided by the CI and proved the CI credible.  Therefore, the affidavit provided sufficient information for the magistrate judge to make an independent finding of probable cause; probable cause was not based on uncorroborated conclusions of the CI.  Also, Special Agent Chittum further enhanced the CI's credibility when he testified that the CI had provided useful information during previous investigations.

Even assuming for the sake of argument that the magistrate judge erred in finding probable cause, the good faith exception applies because Jackson has put forth no evidence that the officers misled the magistrate judge, the magistrate judge abandoned his role as a neutral and detached magistrate, the

officers' reliance on the warrant was unreasonable, or the affidavit lacked particularity.

For these reasons, officers acted pursuant to a valid warrant and reasonably relied on the warrant.  Jackson's motion to suppress evidence recovered during the execution of the search warrant is **DENIED.**

On a separate note, the court questions whether Jackson has standing to challenge the search warrant for McCallister's residence.  The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Minnesota v. Carter, 525 U.S. 83, 88 (1998) (citing Rakas v. Illinois, 439 U.S. 128, 143 (1978)).  A defendant "has the burden of establishing that he is the *kind* of visitor who has an objectively reasonable expectation of privacy in a residence that is not his own." United States v. Green, 106 F.4th 368, 375 (4th Cir. 2024) (citing United States v. Gray, 491 F.3d 138, 144-45 (4th Cir. 2007)).

In this respect, "the Supreme Court has drawn a clear distinction between social guests, on the one hand, and business visitors, on the other." Id.  "An overnight guest, for example, seeks shelter in another's home 'precisely because it provides him with privacy, a place where he and his possessions will not

12

be disturbed.'" <u>Gray</u>, 491 F.3d at 146 (quoting <u>Olson</u>, 495 U.S. at 99).  On the other hand, "[o]ften strangers with little or no connection to a residence, business associates may or may not have reasons for mutual trust.  To expand the protections afforded by the Fourth Amendment to cover any such caller, does not map onto 'the everyday expectations of privacy that we all share.'"  <u>Id</u>. (quoting <u>Olson</u>, 495 U.S. at 98).

Although Jackson was an overnight guest insofar as he slept on the couch in the living room, he told law enforcement officers in his interview that he paid McCallister in pills for the ability to stay there and otherwise supplied her with drugs. The transactional nature of the relationship indicates that Jackson may have been a business visitor; it is not clear that he and McCallister enjoyed the level of mutual trust inherent in a social relationship that would give rise to a reasonable expectation of privacy within her home.

**B.  Interrogation**

As discussed above, suspects must be advised of their <u>Miranda</u> rights to, among other things, have counsel present during a custodial interrogation.  <u>See</u> <u>Pahlawan</u>, No. 3:24cr41 (DJN), 2025 WL 1239354, at *25 (quoting <u>Miranda</u>, 384 U.S. at 444).  However, "whether an individual waived effectuation of the rights conveyed in the <u>Miranda</u> warnings has two distinct dimensions."  <u>United States v. Walker</u>, 607 Fed. App'x 247, 255

13

(4th Cir. 2015) (quoting United States v. Cristobal, 293 F.3d 134, 139 (4th Cir. 2002)).  "First, the relinquishment of the right 'must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception.'"  Id.  "Second, in addition to being voluntary, 'the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'"  Id. (quoting Cristobal, 293 F.3d at 140).

Intoxication alone does not render a waiver involuntary. See id. (citing Cristobal, 293 F.3d at 141).  "Rather, the focus of the voluntariness determination remains 'whether one's will has been overborne.'"  Id.  "The test of whether a person is too affected by alcohol or other drugs voluntarily and intelligently to waive his rights is one of coherence, of an understanding of what is happening."  Id. (quoting United States v. Smith, 608 F.2d 1011, 1012 (4th Cir. 1979)).

In this case, the video of the interrogation leaves no doubt that Jackson was coherent and understood what was happening.

As an initial matter, Jackson chose to speak to the detective, because Jackson believed it would improve his defense against the allegations.  See ECF No. 24-1.  This undermines the argument that he was not acting of his own free will.

14

Additionally, Jackson demonstrated his ability to think clearly.  He understood why police wanted to interview him.  <u>See</u> <u>id</u>.  He recognized the detective from previous encounters.  <u>See</u> <u>id</u>.  He provided detailed accounts of the criminal underworld in Charleston.  <u>See</u> <u>id</u>.  He recalled the events of the night before, including when he arrived at McCallister's home.  <u>See</u> <u>id</u>.  There is simply no indication that Jackson was impaired and unable to voluntarily waive his <u>Miranda</u> rights.

Although Jackson argues that he "repeatedly stated in his statement that he was extremely sleepy, and intoxicated[,]" ECF No. 19 at 3, he never told the detective that he was presently intoxicated, and after indicating that he was sleepy at the beginning of the interview, he went on to speak alertly and coherently for nearly forty minutes.  <u>See</u> ECF No. 24-1.

Therefore, Jackson's motion to suppress his statements made during the interrogation is **DENIED.**

### IV.  <u>Conclusion</u>

For the above reasons, Jackson's motion to suppress (ECF No. 19) is **DENIED.**

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record, the United States Marshal for the Southern District of West Virginia, and the Probation Office of this court.

**IT IS SO ORDERED** this 6th day of June, 2025.

15

ENTER:

David A. Faber
Senior United States District Judge